961 F.2d 1577
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Wayne E. LAFOUNTAIN, Plaintiff-Appellant,
v.
James BLANCHARD, Governor of Michigan, Defendant-Appellee.
 No. 91-1844.
 United States Court of Appeals,
Sixth Circuit.
 April 29, 1992.
 
 Before MERRITT, Chief Circuit Judge, and BOYCE F. MARTIN, Jr. and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff, Wayne LaFountain, appeals the summary judgment of the district court entered in favor of the defendant, James Blanchard, in this civil rights action. For the following reasons, we AFFIRM.
 
 
 2
 In 1984, the Michigan Corrections Commission ("Commission") determined that the prison system was overcrowded and took all administrative steps available to reduce prison overcrowding. After performing its duties, the Commission requested that the defendant governor declare a state of emergency for prison overcrowding. In a December 14, 1984, letter, the defendant responded that he did not "intend to declare a prison overcrowding emergency now or in the near future." The defendant referred the Commission to a proposed Michigan Senate bill which, if enacted, would have allowed the Commission to construct prisons with multiple occupancy bedspace.[1]
 
 
 3
 The plaintiff, a Michigan prisoner, filed a 42 U.S.C. § 1983 civil rights action, alleging that the defendant failed to execute his duties as mandated in the Emergency Power Act, Mich.Comp.Laws § 800.71, et seq., in violation of plaintiff's Fourth Amendment rights. Mich.Comp.Laws § 800.73 provides:
 
 
 4
 The commission shall request the governor to declare a state of emergency in the state's prisons whenever the population of the prison system exceeds the rated design capacity for 30 consecutive days. In making the request, the commission shall certify the rated design capacity and current population of the prison system and that all administrative actions consistent with applicable state laws and the rules promulgated under those laws have been exhausted in an attempt to reduce the prison population to the rated design capacity.
 
 Mich.Comp.Laws § 800.74 provides:
 
 5
 Unless the governor finds within 15 calendar days of the commission's request under section [800.73] that the commission acted in error, the governor shall declare a prison overcrowding state of emergency within that 15 days and the minimum sentences of all prisoners who have established minimum prison terms shall be reduced by 90 days by the director of the department of corrections.[2]
 
 
 6
 The plaintiff alleged that his parole date should have been reduced by ninety days due to prison overcrowding. The plaintiff sought declaratory relief in the form of a ninety-day sentence reduction, as well as damages.
 
 
 7
 The defendant filed a motion to dismiss or, alternatively, for summary judgment. Applying the rule first announced in Parratt v. Taylor, 451 U.S. 527 (1981) (Fourteenth Amendment deprivation of due process property rights is actionable only if an adequate state remedy does not exist), and later extended to liberty interests, see Wilson v. Beebe, 770 F.2d 578, 583 (6th Cir.1985), the district court examined whether adequate state remedies existed to redress any alleged wrong. The district court stated that "Michigan law on immunity appears to create no greater barrier to the present action if it were brought in their courts." Ross v. Consumers Power Co., 363 N.W.2d 641 (Mich.1984) ("[T]he highest executive officials of all levels of government are absolutely immune from all tort liability whenever they ... [act] within their respective ... executive authority.").[3] Finding that adequate process existed in the state courts, the district court held that "[plaintiff had] not been denied any alleged liberty interest without due process of law," and, therefore, granted the defendant's summary judgment motion.[4]
 
 
 8
 The plaintiff alleges both procedural and substantive due process violations. "We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972); the second examines whether the procedures attendant upon that deprivation were constitutional. Hewitt v. Helms, 459 U.S. [460,] ... 472 [ (1983) ]." Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). Although the circumstances herein may create a protected liberty interest, cf. id. at 462-63, we reserve resolution of this issue for a later date.
 
 
 9
 A section 1983 plaintiff alleging deprivation of a protected liberty interest must demonstrate that state court remedies are inadequate. See Wilson, 770 F.2d at 583; cf. National Communication Sys., Inc. v. Michigan Public Serv. Comm'n, 789 F.2d 370 (6th Cir.1986). Among other remedies, the plaintiff may have a tort remedy for false imprisonment. It is not clear whether the circumstances presented herein fit within the contours of Michigan false imprisonment laws. In any event, resolution of such an issue is best left to Michigan state courts.
 
 
 10
 The plaintiff alleges that Michigan governors have absolute immunity from lawsuits in state court. We find this argument unpersuasive. Officials at the highest level of the executive branch are entitled to absolute immunity from all tort actions when acting within their executive authority. Ross, 363 N.W. at 667. The essence of the plaintiff's claim is that the defendant acted outside of his statutory authority. Therefore, the defendant may not be entitled to absolute immunity from tort actions if this alleged act was ultra-vires. Accordingly, the plaintiff has not proven that adequate state remedies do not exist.
 
 
 11
 The plaintiff also alleges a violation of his substantive due process rights. To establish a due process violation, the plaintiff must prove that the defendant's actions were "shocking to the conscience." Rochin v. California, 342 U.S. 165, 172 (1951). Rochin illustrates the types of behavior which "shock the conscience." In Rochin, police officers forcefully attempted to open Rochin's mouth to remove capsules. When their attempts proved futile, the officers took Rochin to a hospital and directed a staff physician to insert an emetic solution into Rochin's stomach. The solution induced vomiting, whereupon the officers found two capsules of morphine. Id. at 166. This type of intrusive behavior is vastly different from the defendant's behavior. The defendant, relying on a proposed Michigan Senate bill, refused to declare an emergency for prison overcrowding. Although the defendant's conduct may have upset the plaintiff, it is not the type of conduct that would "shock the conscience." For the aforementioned reasons, the judgment of Chief Judge Benjamin F. Gibson is AFFIRMED.
 
 
 
 [1]
 The bill was subsequently enacted, but it did not remedy the overcrowding problem
 
 
 [2]
 Mich.Comp.Laws §§ 800.73 and 800.74 have since been repealed
 
 
 [3]
 Portions of the Ross governmental immunity holding have been superseded by statute. See Alexander v. Riccinto, 1991 WL 247430, at * 2 (Mich.Ct.App. Nov. 19, 1991). However, Ross applies to actions accruing prior to July 1, 1986. The plaintiff's action accrued in 1984. Accordingly, Ross applies to this action
 
 
 [4]
 The district court did not address the issue of whether the plaintiff had a protected liberty interest